UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-24272-CIV-SMITH

NLG, LLC,

        Appellant/Defendant,

vs.

LIZA HAZAN and
SELECTIVE ADVISORS GROUP, LLC,

        Appellees/Plaintiffs.
_____/

## ORDER GRANTING MOTION TO DISMISS APPEAL

This matter is before the Court on Appellees/Plaintiffs Liza Hazan and Selective Advisors Group, LLC's Motion to Dismiss Appeal [DE 22], Appellant/Defendant NLG, LLC's response [DE 29], and Appellees/Plaintiffs' reply [DE 30]. This is an appeal from an order entered by the Bankruptcy Court in Liza Hazan's (Hazan) Chapter 11 proceedings. Hazan and Selective Advisors Group, LLC (Selective) move to dismiss the appeal pursuant to the equitable mootness doctrine. For the reasons set forth below, the Motion to Dismiss Appeal is granted.

### I. BACKGROUND

In 2007, Hazan purchased a home on Fisher Island in Miami Beach, Florida (the Property) from NLG. As part of the sale, NLG retained a mortgage and a note from Hazan. Almost from the time of the purchase, Hazan and NLG have been litigating over the mortgage and note. As a result, there are numerous state court judgments relating to the mortgage and note and the parties' liabilities to each other. The state court judgments at issue all predate the filing of Hazan's Chapter 11 filing.

NLG, LLC (NLG) appeals from the Bankruptcy Court's Final Judgment on Counts I, II, and III of Plaintiffs' Third Amended Complaint Determining Validity, Priority and Extent of Liens and Setting Trial on Counts IV through IX. Count I sought a determination of the extent, validity, and priority of NLG's claim of lien; Count II sought to avoid NLG's security interest pursuant to 11 U.S.C. § 544; and Count III sought to quiet title to the Property pursuant to Florida Statutes §§ 65.081 and 65.011. The Bankruptcy Court's order sought to reconcile all of the state court judgments and determine the parties' rights to the Property. Thus, an understanding of the state court proceedings and Bankruptcy Court proceedings is necessary.

*State Court Proceedings*

In April 2008, NLG sued Hazan for breach of the terms of the promissory note in Miami-Dade Circuit Court. The trial court entered a default final judgment against Hazan (the Scola Judgment). The Scola Judgment awarded NLG $1.6 million in monetary damages but did not order foreclosure on the Property. In December 2011, NLG filed a second action in Miami-Dade Circuit Court seeking to foreclose on the mortgage (Foreclosure Action). In February 2013, the court ruled that NLG had made an election of remedies in its previous action and, therefore, was precluded from foreclosing on the mortgage (the Eig Order). NLG appealed the Eig Order to the Third District Court of Appeal.

While all of this was going on, in February 2012, 9197-5904 Quebec, Inc. (Quebec, Inc.) obtained a judgment by confession against NLG in New York Supreme Court in the amount of $5 million (the Quebec Judgment). Quebec, Inc. assigned the Quebec Judgment to Selective[1] and Selective filed to domesticate the Quebec Judgment in Florida (the Domestication Case). In July

---

[1] The principal of Selective is Hazan's husband, Sean Meehan.

2014, Selective filed proceedings supplementary in the Domestication Case to seize and attach the Scola Judgment for purposes of partially satisfying the Quebec Judgment. On August 20, 2014, an order was entered in the Domestication Case assigning the Scola Judgment to Selective as well as "all of NLG, LLC's rights, claims and benefits held against Elizabeth Hazan" (the Lopez Order). The Lopez Order also determined that $2.7 million was the correct sum to be credited to NLG for the Scola Judgment because of interest on the $1.6 million original judgment amount. The Lopez Order also noted that the amount that should be credited to NLG could be adjusted at a further hearing. On August 20, 2014, Selective filed a satisfaction of the Scola Judgment and the mortgage.

In a lawsuit filed by NLG against Hazan in New York Supreme Court to domesticate the Scola Judgment in New York, Selective sought to intervene. On October 30, 2014, the New York Supreme Court entered an order recognizing the assignment of the Scola Judgment to Selective under the Lopez Order and substituted Selective for NLG in the New York action (the Jaffe Order). On November 13, 2014, the New York judge dismissed the case based on the satisfaction of judgment in the underlying action.

On November 25, 2014, the Third District Court of Appeal, holding that NLG's prior suit for breach of the promissory note was not an election of remedies precluding a foreclosure action, issued its mandate reversing and remanding the Foreclosure Action. On remand of the Eig Order, the trial court entered a final foreclosure judgment in favor of NLG (the Gordo Judgment). The Gordo Judgment found that NLG was a secured creditor with a valid interest in the Property and was entitled to a foreclosure judgment in the amount of $4.8 million. An order of foreclosure was entered and the foreclosure sale was set for January 12, 2016. Hazan appealed the Gordo Judgment but later voluntarily dismissed the appeal.

*Bankruptcy Court Proceedings*

On January 11, 2016, the day before the scheduled foreclosure sale, Hazan filed for Chapter 11 protection staying the foreclosure sale. As part of the bankruptcy proceedings, NLG filed a proof of claim against the Property in the amount of the Gordo Judgment. On August 21, 2016, Selective initiated an adversary proceeding against NLG seeking a determination of the nature and extent of the proof of claim. Hazan joined the adversary proceeding. In the adversary proceeding, Selective and Hazan argues that NLG had no remaining claim against Hazan or the Property based on the state court orders and judgments.

On October 31, 2017, the Bankruptcy Judge issued his Final Judgment on Counts I, II, and III of Plaintiffs' Third Amended Complaint Determining Validity, Priority and Extent of Liens and Setting Trial on Counts IV through IX (the Bankruptcy Judgment). The Bankruptcy Judgment acknowledged all of the state court orders and judgments and noted that full faith and credit must be given to all of the state court judgments. The Bankruptcy Judgment determined that, based on all of the state court orders and judgments, NLG did not have a valid lien on the Property because the note and mortgage had been satisfied. The Bankruptcy Judgment, therefore, disallowed NLG's proof of claim. Finally, the Bankruptcy Judgment ordered that Selective give credit to NLG in the amount of $4.8 million, as awarded by the Gordo Judgment.

NLG appealed the Bankruptcy Judgment. After entry of the Bankruptcy Judgment, Hazan filed an amended disclosure statement and an amended plan of reorganization. The disclosure statement recognized several valid claims against the Property but, as a result of the Bankruptcy Judgment, did not recognize NLG's claim. The reorganization plan specifically dealt with the other claims. According to the disclosure statement, Chase Bank agreed to withdraw its objections to the proposed reorganization plan. The disclosure statement recognized that Chase Bank had a

4

first-priority security interest that would have adequate protection from other creditors in the form of an equity cushion on the Property. Another creditor with a valid claim against the Property, 6913 Valencia, LLC, agreed to subordinate its claim until the claims with higher priority, including Chase Bank's claim, were satisfied. Another creditor, Valencia Estates Community Association, Inc., settled its claim against the Property and withdrew its objections to the reorganization plan. The Internal Revenue Service also held a secured claim and was to be paid out over ten years. The disclosure statement also noted that the equity in the Property would support a refinancing, which could be used to support funding a plan if necessary.

On December 13, 2017, the Bankruptcy Court approved the disclosure statement. On May 30, 2018, the Bankruptcy Court held a confirmation hearing on Hazan's proposed reorganization plan. At the hearing, NLG advised the Bankruptcy Court that an appeal of the Bankruptcy Judgment was pending before Judge Gayles. NLG's counsel agreed that there was no stay in place and the Bankruptcy Judge warned NLG that if plan confirmation and consummation occur "it may moot out the appeal . . . If there's a stay, then nothing can happen until that matter is decided . . ." NLG did not raise any objections to entry of the confirmation order nor did it seek a stay. On June 12, 2018, the Bankruptcy Court entered an order approving Hazan's plan of reorganization. Accordingly, Hazan began making payments under the plan. On August 18, 2018, NLG filed a motion to stay the bankruptcy proceedings until the appeal was filed. The Bankruptcy Court denied the motion to stay.

On August 23, 2018, Judge Gayles dismissed NLG's appeal of the Bankruptcy Judgment on the grounds that it was not a final order and NLG had failed to obtain a certificate of appealability. NLG then sought certification from the Bankruptcy Court, which, on October 11, 2018, certified its judgment as final. On October 17, 2018, NLG filed its Notice of Appeal in the

instant case. On the same day, NLG also filed a motion to stay the instant case and a few days later NLG filed an amended motion to stay, both of which were denied by the previously assigned district judge. On December 6, 2018, the Bankruptcy Court entered an order discharging Hazan.

## II. DISCUSSION

Hazan and Selective seek to dismiss this appeal based on the doctrine of equitable mootness. NLG argues that before this Court can dismiss the appeal based on equitable mootness, it must first determine whether the Bankruptcy Court, pursuant to the *Rooker-Feldman* doctrine, lacked jurisdiction to hear the issues raised by the Third Amended Complaint. The Court will first address whether *Rooker-Feldman* prevented the Bankruptcy Court from considering the issues raised by the Third Amended Complaint. Then the Court will address whether the appeal should be dismissed under equitable mootness.

### A. *Rooker-Feldman Is Not Applicable*

NLG maintains that, under the *Rooker-Feldman* doctrine, the Bankruptcy Court lacked jurisdiction to hear the issues raised in the Third Amended Complaint because it relitigated the same issues that had been rejected by the state court judge in the foreclosure action. Under *Rooker-Feldman* a party losing in state court is barred from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). The Supreme Court has reiterated that *Rooker-Feldman* applies only in narrow circumstances, specifically in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*

*Corp.*, 544 U.S. 280, 284 (2005). Thus, *Rooker-Feldman* does not apply when the parties to the cases are not the same. *Johnson v. De Gandy*, 512 U.S. 997, 1006 (1994); *Roe v. State of Ala. by and Through Evans*, 43 F.3d 574, 580 (11th Cir. 1995) (holding *Rooker-Feldman* does not apply because plaintiffs were not parties to state court action). Those narrow circumstances are not present in the instant case.

First, the parties in the Bankruptcy case and the state foreclosure action are not the same because Selective was not a party to the state court foreclosure action. While NLG argues in its Initial Brief on Appeal [DE 6] that Selective had numerous opportunities to raise its claims in state court, NLG does not dispute that Selective was not a party to the foreclosure action and, in fact, Selective's attempt to become a party through intervention was denied. Second, neither Hazan nor Selective sought to overturn the state foreclosure judgment or have it declared null and void and neither argues that the state court foreclosure judgment violated their federal rights. Thus, NLG has not shown that the narrow circumstances under which *Rooker-Feldman* applies have been established in the instant case. Additionally, NLG admitted, in its Answer to Hazan and Selective's Third Amended Complaint, that the Bankruptcy Court had jurisdiction over the claims in the Third Amended Complaint. Accordingly, *Rooker-Feldman* did not bar Hazan and Selective's claims in the Bankruptcy proceedings.

**B.      NLG's Appeal is Equitably Moot**

Hazan and Selective argue that NLG's appeal should be dismissed under the doctrine of equitable mootness. In the bankruptcy context, the doctrine of equitable mootness permits a court to dismiss an appeal based on its lack of power to rescind certain transactions. *In re Winn Dixie Stores, Inc.*, 286 F. App'x 619, 623 (11th Cir. 2008). "Central to a finding of mootness is a determination by an appellate court that it cannot grant effective relief. Put another way, the court

must determine whether the 'reorganization plan has been so substantially consummated that effective relief is no longer available.'" *In re Club Assocs.*, 956 F.2d 1065, 1069 (11th Cir. 1992) (quoting *Miami Ctr. Ltd. P'ship v. Bank of N.Y.*, 820 F.2d 376, 379 (11th Cir. 1987)). The test for mootness attempts to strike "the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him." *In re Club Assocs.*, 956 F.2d at 1069.

To determine whether a confirmation plan has progressed to a point where effective judicial relief is no longer a viable option, a reviewing court should consider:

> Has a stay pending appeal been obtained and if not, why not?
>
> Has the plan been substantially consummated? If so, what kind of transactions have been consummated?
>
> What type of relief does the appellant seek on appeal?
>
> What effect would granting the relief have on interests of third-parties not before the court?
>
> Would relief affect the re-emergence of the debtor as a revitalized entity?

*Id.* at 1069 n.11. Further, a court should not allow a piecemeal dismantling of a reorganization plan. *Miami Ctr. Ltd. P'ship v. Bank of N.Y.*, 838 F.2d 1547, 1555 (11th Cir. 1988).[2]

Hazan and Selective argue that the answers to most of these questions weigh in favor of a finding that Hazan's confirmation plan has progressed beyond a point where effective judicial relief is available. Specifically, Hazan and Selective argue: NLG failed to timely seek a stay of

---

[2] NLG cites several Third Circuit cases that question and limit the application of the equitable mootness doctrine. None of these cases are binding on this Court. Moreover, the Eleventh Circuit, as recently as August 2018, has recognized the doctrine as applying in the Chapter 11 reorganization context. *See Bennett v. Jefferson Cty., Ala.*, 899 F.3d 1240, 1242 (11th Cir. 2018).

8

the Bankruptcy Judgment on appeal; Hazan's reorganization plan has been substantially consummated; and modification of the plan would unfairly impact innocent third-parties and Hazan's reorganization.

Failure to obtain a stay weighs in favor of finding an appeal moot. *In re Winn Dixie*, 286 F. App'x at 623. This is because of "the important policy of bankruptcy law that court-approved reorganization plans be able to go forward based on court approval unless a stay is obtained." *Miami Ctr.*, 838 F.2d at 1555. Here, NLG did not timely seek a stay and, as a result, NLG's motions to stay were denied. The Bankruptcy Judgment was issued on October 31, 2017. NLG filed its first appeal of the judgment on November 9, 2017.[3] NLG did not seek a stay. At the May 30, 2018 Confirmation Hearing, NLG's counsel agreed that there was no stay in place and the Bankruptcy Judge warned NLG that if the plan confirmation and consummation occur "it may moot out the appeal . . . If there's a stay, then nothing can happen until that matter is decided . . ." NLG eventually sought a stay on August 8, 2018, over nine months after the Bankruptcy Judgment was entered, almost three months after the confirmation hearing, and nearly two months after the entry of the Confirmation Order. On August 22, 2018, the Bankruptcy Court denied the motion to stay as untimely. This appeal was filed on October 17, 2018 and NLG sought a stay immediately, which the previously assigned district judge denied. By that time, however, nearly a year had passed since the Bankruptcy Judgment had been issued, the plan had been confirmed, and substantially consummated. Thus, NLG did not timely seek a stay.

---

[3] As noted in the Background section, on August 23, 2018, this initial appeal was dismissed because, at that time, the Bankruptcy Judgment was not an appealable final order.

Hazan and Selective next argue that Hazan's reorganization plan has been substantially consummated as claims have been settled and funds have been disbursed. Under the Bankruptcy Code, "substantial consummation" means:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). First, Hazan and Selective contend that all of the property proposed by the plan to be transferred has been transferred. Specifically, the Plan called for all pre-petition property of the estate to re-vest in the Reorganized Debtor and that has happened. Second, Hazan has assumed all obligations and management of all property dealt with by the Plan. Third, Hazan has commenced distributions under the Plan, has made payments under the Plan, and has substantially completed distributions to unsecured creditors under the Plan. Hazan has made more that $500,000 in distributions. After the filing of the instant motion to dismiss, Hazan was granted a discharge in her bankruptcy.

NLG does not contest that the Plan has been substantially consummated; instead, it argues that the relief it seeks would affect only the Property and, thus, other creditors would not be affected. This, however, amounts to a piecemeal dismantling of the Plan, which the Eleventh Circuit has warned against. *See Miami Ctr. Ltd. P'ship*, 838 F.2d at 1555. Moreover, NLG fails to recognize that other creditors settled their claims or agreed to subordinate their claims to other secured creditors based on the Bankruptcy Judgment determining that Selective had satisfied its lien against Hazan and that NLG's lien had been extinguished.

NLG was not the only creditor with a security interest in the Property; the Internal Revenue Service, Chase Bank, Valencia Estates Community Association, Inc., and 6913 Valencia, LLC also had security interests in the Property. These creditors supported the Hazan's plan, which included the disallowance of NLG's claim. With the disallowance of NLG's claim, these creditors were afforded an equity cushion securing Hazan's debts to them. If NLG's claim were reinstated, these creditors would lose this security.[4] Neither Chase Bank nor 6913 Valencia, LLC had consented to the earlier disclosure statement which did not incorporate the disallowance of NLG's claim. Thus, modifying the reorganization plan, as NLG's requested relief would do, would adversely affect all creditors who relied on the extinguishment of NLG's claim in agreeing to the reorganization plan. *See In re Winn-Dixie*, 286 F. App'x at 623-24 (concluding that appellants' appeal was equitably moot because granting the relief sought – an order reinstating appellants' extinguished claims and awarding appellants with shares held in reserve pursuant to the terms of the plan – would affect a material component of the reorganization plan as other creditors agreed to the plan on the basis that no additional shares would be paid out); *see also Miami Center Ltd. P'ship*, 820 F.2d at 380 (dismissing appellant's claim as equitably moot because "the impact of the proposed relief on the organization plan and innocent creditors would be significant."). Furthermore, non-secured creditors may have also relied on the disallowance of NLG's claim because the disclosure statement noted that the equity in the Property would support a refinancing,

---

[4] At first glance it would appear that Chase Bank would not be affected because it holds a first priority mortgage. However, in the Adversary Proceeding, NLG asserted that Chase Bank lost its priority position. Thus, if NLG's claim were reinstated, a determination as to the priority of the two liens would need to be made and, depending on the outcome, Chase Bank could be adversely affected.

11

which could be used to support funding a plan if necessary. Reinstatement of NLG's claim would reduce or wipe-out that equity.

Having considered the factors relevant to a finding of equitable mootness, the Court finds that NLG failed to timely seek a stay of the Bankruptcy Judgment, despite warning from the Bankruptcy Judge that failure to do so could make NLG's appeal moot; Hazan has substantially consummated the Plan and has been discharged; the relief requested by NLG would require a piecemeal dismantling of the Plan; and the relief requested by NLG would adversely affect innocent third-party creditors who relied on the disallowance of NLG's claim in supporting the Plan. Consequently, NLG's appeal is equitably moot.

Accordingly, it is

**ORDERED** that Appellees/Plaintiffs Liza Hazan and Selective Advisors Group, LLC's Motion to Dismiss Appeal [DE 22] is **GRANTED:**

a) This appeal is **DISMISSED.**

b) All pending motions not otherwise ruled upon are **DENIED as moot.**

c) This case is **CLOSED.**

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 18 day of September, 2019.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc: All counsel of record